**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT**

I, James P. Munjone, a Special Agent with Homeland Security Investigations, being duly sworn, hereby depose and state as follows:

**INTRODUCTION**

1.     I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search the following electronic device: one **Samsung Galaxy Z Flip 3 SM-F711U** cellular telephone, further described in Attachment A, which is attached hereto and incorporated by reference, for evidence, contraband, fruits, and instrumentalities of violations of 18 U.S.C. § 2251 (production of child pornography) and 18 U.S.C. § 2252(a)(4)(B) (possession of and access with intent to view child pornography), as more specifically described in Attachment B, which is attached hereto and incorporated by reference.

**IDENTIFICATION OF THE ITEMS TO BE SEIZED/SEARCHED**

2.     The item to be searched is a black-in-color **Samsung Galaxy Z Flip 3 SM-F711U** cellular phone, IMEI: 350101093621318. This device will hereinafter be referred to as the SUBJECT DEVICE and is further described in Attachment A.

3.     The SUBJECT DEVICE is currently in the lawful custody of Homeland Security Investigations ("HSI"), at the Pennsylvania State Police Barracks, located at 8320 Schantz Road, Breinigsville, Pennsylvania.  In my training and experience, I know that the SUBJECT DEVICE has been stored in a manner in which its contents are, to the extent material to the investigation, in substantially the same state as they were when the SUBJECT DEVICE first came into possession of law enforcement.

1

## **AFFIANT BACKGROUND**

4.     I have been a member of HSI since June 2005 assigned to the Resident Agent in Charge ("RAC") Allentown, Pennsylvania Office.  As part of my daily duties with HSI, I investigate criminal violations relating to child exploitation and child pornography including violations pertaining to the illegal production, distribution, receipt, and possession of child pornography, in violation of 18 U.S.C. §§ 2251 and 2252.  I have had the opportunity to observe and review numerous examples of child pornography (as defined in 18 U.S.C. § 2256) in all forms of media including computer media.  I have also conducted more than 500 child exploitation computer/mobile forensic examinations.  I have attended numerous professional training courses related to child exploitation/forensic examinations.

5.     I have participated in the execution of numerous search warrants, several of which involved child exploitation and/or child pornography offenses.  Moreover, I am a federal law enforcement officer who is engaged in enforcing criminal laws, including 18 U.S.C. §§ 2251, 2252, 2252A, and 2423, among others, and I am authorized by law to request a search warrant.

6.     The statements in this affidavit are based in part on information provided by other law enforcement officers and on my investigation of this matter.  Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation.  I have set forth only the facts that I believe are

necessary to establish probable cause to believe that contraband and evidence, fruits, and instrumentalities of violations of 18 U.S.C. § 2251(a) (production of child pornography) and 18 U.S.C. § 2252(a)(4)(B) (possession of and access with intent to view child pornography) are presently located on the SUBJECT DEVICE.

## STATUTORY AUTHORITY

7.     As noted above, this investigation concerns alleged violations of the following:

a.     Title 18 U.S.C. § 2251(a) prohibits a person from employing, using, persuading, inducing, enticing, or coercing any minor, that is, a person under the age of 18 years, to engage in any sexually explicit conduct for the purpose of producing any visual depiction of such conduct using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer, or attempting to do so.

b.     Title 18 U.S.C. § 2252(a)(4)(B) prohibits a person from knowingly transporting, shipping, receiving, distributing, reproducing for distribution, possessing, or accessing with intent to view any visual depiction of minors engaging in sexually explicit conduct, or produced using a minor engaged in such conduct, when such visual depiction was either mailed or shipped or transported in interstate or foreign commerce, or in or affecting interstate commerce, by any means, including by computer, or when such visual depiction was produced using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer, or attempting to do so.

## DEFINITIONS

8.     The following definitions apply to this Affidavit and Attachments A & B:

3

a.      "Chat," as used herein, refers to any kind of text communication over the Internet that is transmitted in real-time from sender to receiver.  Chat messages are generally short in order to enable other participants to respond quickly and in a format that resembles an oral conversation.  This feature distinguishes chatting from other text-based online communications such as Internet forums and email.

b.      "Child erotica," as used herein, means materials or items that are sexually arousing to persons having a sexual interest in minors but that are not necessarily obscene or do not necessarily depict minors engaging in sexually explicit conduct.

c.      "Child pornography," (CSAM – Child Sexual Abuse Material) as defined in 18 U.S.C. § 2256(8), is any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical or other means, of sexually explicit conduct, where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct, (b) the visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct, or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct.

d.      "Computer," as used herein, refers to "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device" and includes smartphones, other mobile phones, and other mobile devices.  *See* 18 U.S.C. § 1030(e)(1).

4

e.      "Computer hardware," as used herein, consists of all equipment that can receive, capture, collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, or similar computer impulses or data.  Computer hardware includes any data-processing devices (including central processing units, internal and peripheral storage devices such as fixed disks, external hard drives, "thumb," "jump," or "flash" drives, which are small devices that are plugged into a port on the computer, and other memory storage devices); peripheral input/output devices (including keyboards, printers, video display monitors, and related communications devices such as cables and connections); as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware (including physical keys and locks).

f.      "Computer passwords and data security devices," as used herein, consist of information or items designed to restrict access to or hide computer software, documentation, or data.  Data security devices may consist of hardware, software, or other programming code.  A password (a string of alpha-numeric characters) usually operates what might be termed a digital key to "unlock" particular data security devices.  Data security hardware may include encryption devices, chips, and circuit boards.  Data security software may include programming code that creates "test" keys or "hot" keys, which perform certain pre-set security functions when touched.  Data security software or code may also encrypt, compress, hide, or "booby-trap" protected data to make it inaccessible or unusable, as well as reverse the process to restore it.

g.      "Geolocated," as used herein, refers to the identification of the geographical location of (a person or device) by means of digital information processed via the Internet.

h.      "Internet Service Providers" ("ISPs"), as used herein, are commercial organizations that are in business to provide individuals and businesses access to the Internet.  ISPs

5

provide a range of functions for their customers including access to the Internet, web hosting, email, remote storage, and co-location of computers and other communications equipment.

i.      An "Internet Protocol address" or "IP address," as used herein, refers to a unique numeric or alphanumeric string used by a computer or other digital device to access the Internet.  Every computer or device accessing the Internet must be assigned an IP address so that Internet traffic sent from and directed to that computer or device may be directed properly from its source to its destination.  Most Internet Service Providers ("ISPs") control a range of IP addresses.  IP addresses can be "dynamic," meaning that the ISP assigns a different unique number to a computer or device every time it accesses the Internet.  IP addresses might also be "static," if an ISP assigns a user's computer a particular IP address that is used each time the computer accesses the Internet.  ISPs typically maintain logs of the subscribers to whom IP addresses are assigned on particular dates and times.

j.      The "Internet" is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

k.      "Minor," as defined in 18 U.S.C. § 2256(1), refers to any person under the age of eighteen years.

l.      "Mobile application" or "chat application," as used herein, are specialized programs downloaded onto mobile devices, computers and other digital devices that enable users to perform a variety of functions, including engaging in online chat and sending or receiving images and videos.

m. "Records," "documents," and "materials," as used herein, include all information recorded in any form, visual or aural, and by any means, whether in handmade, photographic, mechanical, electrical, electronic, digital, or magnetic form.

n. "Sexually explicit conduct," as defined in 18 U.S.C. § 2256(2), means actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the anus, genitals, or pubic area of any person. An image can depict the lascivious exhibition of the genitals or pubic area even if the child is clothed, *see United States v. Knox*, 32 F.3d 733 (3d Cir. 1994), *cert. denied*, 513 U.S. 1109 (1995); *United States v. Caillier*, 442 F. App'x 904 (5th Cir. 2011), so long as it is sufficiently sexually suggestive under the factors outlined in *United States v. Dost*, 636 F. Supp. 828 (S.D. Cal. 1986), *aff'd sub nom*, *United States v. Wiegand*, 812 F.2d 1239 (9th Cir. 1987), *aff'd*, 813 F.2d 1231 (9th Cir. 1987), *cert. denied*, 484 U.S. 856 (1987)

o. A "storage medium" is any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, "thumb," "jump," or "flash" drives, CD-ROMs, and other magnetic or optical media.

p. "Visual depiction," as defined in 18 U.S.C. § 2256(5), includes undeveloped film and videotape, data stored on computer disc or other electronic means which is capable of conversion into a visual image, and data which is capable of conversion into a visual image that has been transmitted by any means, whether or not stored in a permanent format.

q. "EXIF" Exchangeable Image File Format (EXIF) is a standard that defines specific information related to an image or other media captured by a digital camera. It is capable

7

of storing such important data as camera exposure, date/time the image was captured, and even GPS location.

## PROBABLE CAUSE

### SUBJECT OF INVESTIGATION

9.    Efrain BAEZ-FELICIANO (hereinafter BAEZ-FELICIANO) was born on XX/XX/1988.[1]  A records check with the Pennsylvania Department of Transportation was made and he has been assigned a PA OLN of 31804166.  His PA OLN has an address of 2936 Center Road, Northampton, Pennsylvania 18067.

### BACKGROUND OF INVESTIGATION

10.    On February 20, 2025, Detective Matthew Bennicoff of the Northampton Borough Police Department received a phone call from the Plainfield Police Department in New Jersey. Plainfield Police Department stated Jennifer Baez-Feliciano and her daughter, hereinafter Minor Victim 1 ("MV1"), reported a sexual assault that occurred in the Northampton Borough jurisdiction.  The sexual assault was on MV1 by her father, Efrain BAEZ-FELICIANO, had started when MV1 was six years old, and had continued through late December 2024.

11.    MV1, whose date of birth is known to me, is currently 14 years of age.  Her mother, Jennifer Baez-Feliciano, is the ex-wife of BAEZ-FELICIANO.

12.    On March 8, 2025, MV1 was interviewed by Northampton County Children and Youth. MV1 stated she was sexually abused by her father BAEZ-FELICIANO starting when she was around six or seven years old.  The most recent abuse occurred when she was at BAEZ-FELICIANO's house, located at 2936 Center Road, Northampton, Pennsylvania, over the

---

[1] BAEZ-FELICIANO's true and complete birth date is known to law enforcement.

Christmas holiday in 2024.

13.    MV1 stated that BAEZ-FELICIANO would perform oral sex on her, and he would make her perform oral sex on him.  MV1 stated that, on one occasion, BAEZ-FELICIANO accidentally put his penis inside of her vagina.  During this instance, he apologized because it hurt her.  MV1 stated BAEZ-FELICIANO would put his fingers inside and outside her vagina; oral sex would consist of him putting his tongue inside and outside her vagina; and he would rub his penis on the outside of her vagina. MV1 also stated that BAEZ-FELICIANO put his penis on her chest area and would tell her squeeze her breasts together and he would rub his penis in the area.

14.    MV1 stated BAEZ-FELICIANO would perform sexual acts on both her and her brother, Minor Victim 2 (MV2).  MV2, whose date of birth is known to me, is approximately one year younger than MV1.  MV1 stated that once she, BAEZ-FELICIANO, and MV2 played naked truth or dare.  At the end of the game, BAEZ-FELICIANO ejaculated on MV1.  MV1 also recalled BAEZ-FELICIANO performing oral sex on MV2.  MV1 also stated BAEZ-FELICIANO instructed her to touch MV2's penis.

15.    MV1 stated BAEZ-FELICIANO would use his Android cell phone to show her pornographic videos with kids touching each other in a sexual manner.  MV1 estimated the ages of the children in the videos to be between 5 and 11.

16.    MV1 stated that BAEZ-FELICIANO was in a group chat, likely through the WhatsApp application on his cell phone, titled "Horny Dads," where he accessed child pornography videos.

17.    MV1 stated BAEZ-FELICIANO would record videos and take pictures of her on his Android cell phone while she was naked; BAEZ-FELICIANO would instruct MV1 how to

pose in these images. MV1 stated BAEZ-FELICIANO stored these images in a password-protected application on his cell phone.

18.     On March 11, 2025, Northampton Borough Police Department conducted a state search warrant (Docket # MD 489-2025) at BAEZ-FELICIANO's residence at 2936 Center Road, Northampton, Pennsylvania. At that time, BAEZ-FELICIANO was arrested by Northampton Borough Police Department. He is charged, at docket number CP-48-CR-1592-2025, with possession of child pornography, in violation of 18 Pa.C.S.A. § 6312(d).[2]

19.     During the arrest and entrance to the residence, BAEZ-FELICIANO could be heard yelling to his wife, Kelly Baez-Feliciano, "Baby, I'm sorry, I love You," "Babe, I'm sorry, I love you," "I'm sorry, I love you," "You're going to find out some stuff about me and I'm so sorry, I love you." This was captured on body worn cameras.

20.     Pursuant to the search warrant, the Northampton Borough Police Department seized forty-four electronic devices for forensic analysis. Thirty-three of those devices were sent to the Pennsylvania State Police, Computer Crime Unit for forensic analysis. Eight of those devices contained child sexual abuse material ("CSAM"), erotica, or computer-generated child pornography. Law enforcement identified over 400 CSAM files that depicted MV1 between the ages of 4 and 13. Additionally, law enforcement identified over 2,000 additional CSAM files depicting unidentified victims. The following are examples of what was observed during the forensic examination:

      a.  **Samsung Galaxy Z Flip6 SM-F741U Serial #: R5CX14NMSFP** – This device

---

[2] BAEZ-FELICIANO was subsequently charged at docket number CP-48-CR-1594-2025 with seven felony offenses for the hands-on abuse of MV1.

contained approximately 32 images of MV1 and over 500 images of CSAM with unknown victims. I have personally reviewed these files, and they include the following depictions:

i)   1658.jpg - The image is full in-color and depicts MV1 lying on her back holding her exposed breasts with her hands. The image further depicts that she is lying on a bed sheet with an "Elsa" Disney character comforter under her. The image further depicts an erect adult male penis being placed on her tongue with her mouth open.

ii)  1667.jpg - The image is full in-color and depicts MV1 inside of a bathtub, with a yellow in color cup on the ledge of the bathtub. MV1 can be observed performing oral sex on an erect adult penis.

b.   **Samsung MODEL: SM-G530T1; IMEI:359130063186870** - This device contained approximately 60 CSAM files depicting MV1, including file 20170107_220456.glk, which is a color image depicting MV1's hand on top of an erect adult penis.

c.   **ADATA Micro SD card (32GB) located in LG Cellular Phone, MODEL: LGMS428; Serial #: 612CYGW069215 -** This device contained approximately 14 CSAM files depicting MV1, as well as over 40 CSAM files depicting unknown victims, including file 20180126_205919.jpg, which is a color image of MV1 when she was approximately 5-6 years old in a onesie with the zipper pulled down exposing her vagina. A male hand with a silver in color ring on his left pointer finger, and black/red Timex watch can be observed spreading MV1's vagina with

his fingers.

   d.  **Western Digital HDD (1TB) Serial#: WXA1E51LM376** – This device contained over 50 CSAM files depicting MV1, as well as over 30 files depicting CSAM with unknown victims.   I have personally reviewed these files, and they include the following:

   i)  File Name: 20160415_213726.jpg - The image is full in-color of MV1 with a penis being displayed next to her lips as she lays on her back.

   ii)  File Name: 20160415_213726.jpg - The image is full in-color and depicts MV1 with a blanket or similar object covering the top of her head/face and an erect adult male penis being inserted into the MV1's mouth.

   iii)  **SanDisk blue chain thumb drive (256GB) -** This device contained approximately over 200 CSAM files depicting MV1, as well as more than 1400 CSAM files depicting unknown victims.  File MVIMG_20181123_175100.jpg is a color image depicting MV1 holding her exposed breasts, with an adult erect male penis resting on MV1's tongue with her mouth open.

21.    Following the forensic review by SA Munjone, it was discovered that numerous images and videos of MV1 contained EXIF data.  As explained above, EXIF is a standard that defines specific information related to an image or other media captured when a digital image is created and is capable of storing data, such as camera exposure and date/time the image was captured.

22.    In particular, the EXIF data from at least ten of the images depicting child sexual abuse material featuring MV1 indicates that a **Samsung Galaxy Z Flip 3 SM-F711U** cellular phone

was used to capture the image.  This includes the file titled 20240714_004436.jpg, which depicts MV1 standing in her living room exposing her vagina and breasts.  The camera is focused on the chest and vagina area, and there is an adult male hand pulling down the front of MV1's shorts exposing her vagina.  MV1 is pulling up her gray sweatshirt exposing her breasts. The photo EXIF data shows the image was captured with a **Samsung Galaxy Z Flip 3 SM-F711U cell phone.**

23.     On September 17, 2025, at approximately 1400 hours, Kelly Baez-Feliciano reached out to Detective Bennicoff and stated she was cleaning out the garage and found a cell phone and an SD card, later determined to be an SD card adapter.  She found the devices in the garage of the residence she shared with BAEZ-FELICIANO and believed they belonged to BAEZ-FELICIANO.  At approximately 1500 hours, Kelly Baez-Feliciano turned over the SUBJECT DEVICE, a Samsung Galaxy Z Flip 3 SM-F711U cell phone, as well as an SD card adapter, to Detective Bennicoff.  Kelly Baez-Feliciano provided written consent to Detective Bennicoff to take custody of the devices.  On September 19, 2025, Detective Bennicoff turned over the devices to SA Munjone for forensic analysis.  It was then determined that the SD card was only an adapter and stored no data.  The item was returned to Kelly Baez-Feliciano.

## CHARACTERISTICS COMMON TO INDIVIDUALS WHO ENGAGE IN THE SEXUAL EXPLOITATION OF CHILDREN

24.     Based on my previous experience related to child exploitation investigations (including but not limited to child pornography investigations), and the training and experience of other law enforcement officers with whom I have had discussions, I know that there are certain characteristics common to individuals who engage in the sexual exploitation of children (including those who transport minors with an intent to engage in sexual activity and who receive, possess, and access with intent to view child pornography):

a.  Such individuals may receive sexual gratification, stimulation, and satisfaction from contact with children, or from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses in person, in photographs, or other visual media, or from literature describing such activity.

b.  Such individuals may collect sexually explicit or suggestive materials in a variety of media, including photographs, magazines, motion pictures, books, slides and/or drawings or other visual media.  Individuals who have a sexual interest in children or images of children oftentimes use these materials for their own sexual arousal and gratification.  In some instances, these depictions show the individual's own sexual activity with children.  Further, such individuals may use these materials to lower the inhibitions of children that they are attempting to seduce, to arouse the selected child victim, or to demonstrate the desired sexual acts.

c.  Such individuals almost always possess and maintain their "hard copies" of child pornographic material, that is, their films, videos, magazines, negatives, photographs, correspondence, mailing lists, books, tape recordings, etc., in the privacy and security of their home or some other secure location.  Individuals who have a sexual interest in children or images of children typically retain photos, films, photographs, negatives, magazines, correspondence, books, tape recordings, mailing lists, child erotica, and videos for many years.

d.  Likewise, such individuals often maintain their collections that are in a digital or electronic format in a safe, secure, and private environment, such as a computer, cell phone, or other electronic storage devices (e.g., hard drives or USB drive).  These collections are often maintained for years and are kept close by, usually at the individual's residence or inside the individual's vehicle, to enable the individual to view the collection, which is valued highly.

14

Although it is possible, a person who has this type of material is not likely to destroy the collection, including during moves.

      e.  Such individuals also may correspond with and/or meet others to share information and materials; rarely destroy correspondence from other child pornography distributors/collectors; conceal such correspondence as they do their sexually explicit material; and often maintain lists of names, addresses, and telephone numbers of individuals with whom they have been in contact and who share the same interests in child pornography.

      f.  Such individuals prefer not to be without their child pornography for any prolonged time period.  This behavior has been documented by law enforcement officers involved in the investigation of child pornography throughout the world.

      g.  Such individuals frequently retain records of their child exploitation and child pornography activities for long periods of time, particularly when they are involved in ongoing criminal conduct. Offenders who engage in child exploitation and child pornography often do so for extended periods of time spanning years, and due to the nature of the crime retain evidence and records of their activities for many years. Based on my experience, the passage of long periods of time will not remove the possibility that the evidence of the crimes will still remain.  The evidence may also be innocuous at first glance (e.g., financial, credit card and banking documents, travel documents, receipts, documents reflecting purchases of assets, personal calendars, telephone and address directories, check books, videos and photographs, utility records, ownership records, letters and notes, tax returns and financial records, escrow files, telephone and pager bills, keys to safe deposit boxes, packaging materials, computer hardware and software), but have significance when considered in light of other evidence.  These persons may no longer realize they still possess

the evidence or may believe law enforcement could not obtain a search warrant to seize the evidence. These persons may also be under the mistaken belief that he/she has deleted, hidden or further destroyed any computer-related evidence, but this information may be retrievable by a trained forensic computer expert.

h. Individuals involved in child exploitation and child pornography and/or their associates frequently take, or cause to be taken, photographs or videos of themselves, their associates, their property, and their product, and maintain those photographs or videos in their residences and within computer and electronic equipment in their residences.

i. Individuals involved in child exploitation and child pornography often travel by car, bus, or other means of transportation, both domestically and to and/or within foreign countries, in connection with their illegal activities to meet with victims or coconspirators, and to conduct child exploitation-related activities. Documents relating to such travel, such as calendars, travel itineraries, maps, airline ticket and baggage stubs, frequent use club membership information and records associated with airlines, rental car companies, and/or hotels, airline, hotel and rental car receipts, credit card bills and receipts, photographs, videos, passports, and visas, are often maintained by offenders engaged in child exploitation and child pornography in their residences, stash houses, businesses, on their computers and/or in vehicles where they are readily available for use or reference.

j. These persons frequently maintain listings of names, aliases, telephone numbers, pager numbers, facsimile numbers, physical addresses, and email addresses, sometimes encoded and sometimes not encoded, for the purpose of contacting their victims or co-conspirators, and these records are typically maintained on their person or in their residences, stash houses,

businesses, and/or vehicles, so they are readily available in order to efficiently conduct their child exploitation-related activities. Moreover, such records are often stored electronically within the memory of telephones, computers, and/or personal digital assistants such as iPhone, Android and other electronic devices.

   k. Individuals involved in child exploitation and child pornography frequently utilize cellular telephones, satellite telephones, pagers and text messaging devices, voicemail or answering machine systems, telephone calling cards, computers, email, and/or personal digital assistants such as "smart" phones in order to communicate with their victims or co-conspirators, and these items are often maintained on their person or in their residences, stash houses, businesses, and/or vehicles where they are readily available. A cellular telephone's memory may contain the telephone number that is assigned to that telephone (which will enable investigators to retrieve records concerning that telephone and analyze those records). In addition, cellular telephones often have internal logs which record the outgoing and incoming calls, including the numbers associated with those calls, and this information can also assist in identifying victims or co-conspirators. Similarly, cellular telephones are commonly used for text messages or other forms of electronic messages and often store the messages, and these messages may provide insight into the (a) the nature, extent and methods of child exploitation activities and operations of the conspirators; (b) the identities and roles of co-conspirators; (c) the distribution and transfer of photographs, images, videos, and other records involved in those activities; (d) the existence and location of records; (e) the location and source of resources used to finance their illegal activities; and (f) any attempt to hide the identity or location of those involved. In addition, the information in a phone's memory may constitute admissible evidence of the commission of child exploitation- related offenses.

17

Cellular telephones, computers and other electronic storage devices may also include an address book, calendar and lists of frequently called telephone numbers which may help establish the identities of other individuals who are in frequent contact with the user and involved in child exploitation-related activities. These devices may also include photographs, video recordings and other records of the type described above. Based on my training and experience, I know that even though individuals involved in child exploitation and child pornography will discontinue use of a telephone, they will sometimes keep the physical phone in their possession.

l.  Non-pornographic, seemingly innocuous images of minors are often found on media belonging to child exploitation offenders. Such images are useful in attempting to identify actual minors depicted in child pornography images, or who were otherwise exploited by the offender, that are found during the execution of a search warrant. In certain cases, such images may also assist in determining the origins of a particular child pornography image or series of images, or the location of the offender's contact with the minor.

25.  I have reason to believe that BAEZ-FELICIANO shares the above characteristics common to individuals who sexually exploit children, including those who use the Internet, devices manufactured outside the Commonwealth of Pennsylvania, and other means of interstate commerce to engage children in sexual activity and to produce, receive, possess, and access with intent to view child pornography, based on the following: As further detailed herein, BAEZ-FELICIANO sexually assaulted MV1 for a period of years. MVI further reported that BAEZ-FELICIANO also sexually assaulted her younger brother, MV2. BAEZ-FELICIANO documented his sexual abuse by photographing MV1 with electronic devices, including by using the SUBJECT DEVICE, further identified in Attachment A. Further, forensic examination of BAEZ-

FELICIANO's electronic devices shows that he has stored numerous depictions of CSAM, including images of MV1 and unknown victims, on numerous devices. Additionally, MV1 reported that BAEZ-FELICIANO used a cellular phone to show her child pornography and to participate in a group chat where he accessed child pornography.

## ELECTRONIC DEVICES AND FORENSIC ANALYSIS

26.    Based on my training and experience, I use the following technical terms to convey the following meanings:

a.    Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b.    Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the

camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c.    Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d.    GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude,

longitude, and sometimes altitude with a high level of precision.

e.   PDA:  A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments, or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail.  PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data.  Removable storage media include various types of flash memory cards or miniature hard drives.  This removable storage media can store any digital data.  Most PDAs run computer software, giving them many of the same capabilities as personal computers.  For example, PDA users can work with word-processing documents, spreadsheets, and presentations.  PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f.   Tablet: A tablet is a mobile computer, typically larger than a phone yet smaller than a notebook, that is primarily operated by touching the screen.  Tablets function as wireless communication devices and can be used to access the Internet through cellular networks, 802.11 "wi-fi" networks, or otherwise.  Tablets typically contain programs called apps, which, like programs on a personal computer, perform different functions and save data associated with those functions.  Apps can, for example, permit accessing the Web, sending and receiving e-mail, and participating in Internet social networks.

g.   Pager:  A pager is a handheld wireless electronic device used to contact an individual through an alert, or a numeric or text message sent over a telecommunications network. Some pagers enable the user to send, as well as receive, text messages.

h.   IP Address: An Internet Protocol address (or simply "IP address") is a unique

numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

      i.   Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

27.     Based on my training, experience, and research, I know that the types of devices sought to be searched have capabilities that allow them to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA, as well as storage devices. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

28.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

29.     There is probable cause to believe that things that were once stored on the SUBJECT DEVICE may still be stored there, for at least the following reasons:

      a.   Based on my knowledge, training, and experience, I know that computer files or

remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet.  Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools.  This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

b.   Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file— for long periods of time before they are overwritten.  In addition,

a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c.   Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it.  To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files.  Computer users typically do not erase or delete this evidence, because special software is typically required for that task.  However, it is technically possible to delete this information.

30.      *Forensic evidence.*  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the devices were used, the purpose of their use, who used them, and when.  There is probable cause to believe that this forensic

electronic evidence might be on these devices because:

a.   Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use.  Computer file systems can record information about the dates files were created and the sequence in which they were created.

b.   Forensic evidence on a device can also indicate who has used or controlled the device.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c.   A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d.   The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves.  Therefore, contextual

information necessary to understand other evidence also falls within the scope of the warrant.

e.  Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

f.  I know that when an individual uses an electronic device to receive, possess or access with intent to view child pornography, or to entice a minor to engage in sexual activity, the individual's electronic device will generally serve both as an instrumentality for committing the crime, and as a storage medium for evidence of the crime.  The electronic device is an instrumentality of the crime because it is used as a means of committing the criminal offense.  The electronic device is also likely to be a storage medium for evidence of crime.  From my training and experience, I believe that an electronic device used to commit a crime of this type may contain: data that is evidence of how the electronic device was used; data that was sent or received; and other records that indicate the nature of the offense.

g.  From my training and experience, I am aware that content on devices such the SUBJECT DEVICE can be easily transferred from one device to another (e.g., by manually saving files from one device to another and by automatically synching devices—such as an iPhone and laptop— over a cloud-based platform), and frequently are so transferred.  From my training and experience, I am also aware that when individuals move from one residence to another, they are likely to take important belongings, including digital devices, with them.  As discussed above, I am also aware that those who engage in the sexual exploitation of children are likely to carry their collections of images from one residence to another, and in my training and experience it would not be unusual for an offender to lie to law enforcement about whether they in fact have deleted child pornography images

they may have received.  Finally, and as discussed above, a computer forensic search examination can often uncover evidence or artifacts of images, even after an offender deletes an image from a digital device.

31.     Based on my knowledge, training, and experience, I know that electronically stored files, particularly photos and videos, must typically be reviewed by the examiner in order to confirm their contents, because file names can easily and purposefully be misleading, and files stored in a way that their true nature is hidden by offenders.

32.     *Nature of examination.*  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the digital devices consistent with the warrant.  The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the devices to human inspection to determine whether it is evidence described by the warrant.

## **CONCLUSION**

33.     Based upon the information above, I respectfully submit that there is probable cause

to believe that BAEZ-FELICIANO committed violations of 18 U.S.C. § 2251 (production of child

pornography) and 18 U.S.C. § 2252(a)(4)(B) (possession of and access with intent to view child

pornography) and that evidence of those violations, as described in Attachment B, is located on

the SUBJECT DEVICE described in Attachment A.    Therefore, I respectfully request that the

attached warrant be issued authorizing the search of electronic devices identified in Attachment A

for the items listed in Attachment B and to seize all items listed in Attachment B as evidence,

contraband, fruits, and instrumentalities of the offense identified above.

Respectfully submitted,

/s/ James P. Munjone_____
James P. Munjone
Special Agent
Homeland Security Investigations

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1
by telephone on September 25, 2025.

_____
HONORABLE PAMELA A. CARLOS
UNITED STATES MAGISTRATE JUDGE

## **ATTACHMENT A**

### **DESCRIPTION OF DEVICES TO BE SEARCHED**

Your affiant is requesting the authorization to search the following item(s):  a black-in-color **Samsung Galaxy Z Flip 3 SM-F711U cellular phone, IMEI: 350101093621318,** depicting in the images below:



**ATTACHMENT B**

**ITEMS TO BE SEARCHED FOR AND SEIZED**

Evidence of violations of 18 U.S.C. §§ 2251 and 2252, including the following:

1.      All visual depictions of minors engaged in sexually explicit conduct produced using minors engaged in such conduct, on whatever medium (e.g. digital media, optical media, books, magazines, photographs, negatives, videotapes, CDs, DVDs, etc.), including those in opened or unopened e-mails.  These include both originals and copies, and authorization is granted to remove videotapes without viewing them at the time and place of seizure, and to view them at a later time.

2.      All documents, to include in electronic form, and stored communications including contact information, text messages, call logs, voicemails, Internet searches, photographs, and any other electronic data or other memory features contained in the devices and SIM cards including correspondence, records, opened or unopened e-mails, text messages, chat logs, and Internet history, pertaining to the possession, receipt, access to, or distribution of child pornography or visual depictions of minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256, or pertaining to an interest in child pornography or minors whether transmitted or received, or which tends to show the knowing possession of any child pornography possessed.

3.      All communications and files with or about potential minors involving sexual topics or in an effort to seduce the minor or efforts to meet a minor.

4.      All records, documents, invoices, notes and materials that pertain to accounts with any Internet Service Provider (ISP), cell phone service provider, or electronic service provider, as well as all records relating to the ownership or use of the computer equipment or electronic devices.

5.      All records bearing on the production, reproduction, receipt, shipment, orders, requests, trades, purchases, or transactions of any kind involving the transmission in or affecting interstate or foreign commerce including by United States mail or by computer of any visual depiction of minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256.

6.      All records which evidence operation or ownership or use of computer or electronic equipment or devices, including, but not limited to, correspondence, sales receipts, bills, financial records, tax records, personal photographs, telephone records, notebooks, diaries, reference materials, or other personal items, and registration information for any software on the computer or device.

7.      Documents and records regarding the ownership and/or possession of the subject device.

8.      During the course of the search, photographs of the searched premises may also be taken to record the condition thereof and/or the location of items therein.

9.      All computer or electronic device passwords, keywords and other data security devices designed to restrict access to or hide computer software, documentation or data.  Data security devices may consist of hardware, software, or other programming code.  Any password or encryption key that may control access to a computer/phone operating system, individual computer/phone files, or other electronic data.

10.     Evidence and contents of logs and files on a computer, electronic device, or storage device, such as those generated by the computer's operating system, which describes the history and use of the device, including but not limited to files indicating when files were written, were opened, were saved, or were deleted.  Evidence tending to show the identity of the person using the

computer or device at the time any of the items described in paragraph 1-3 were created, sent, received, or viewed.  Also, any malware resident on the computer/phone or device.

11.    The following may be seized and searched for all items listed above, and for any items specifically noted in the paragraphs below:

a.    Computer hardware, meaning any and all computer equipment.  Included within the definition of computer hardware are any electronic devices capable of data processing (such as central processing units, laptop or notebook or netbook or tablet computers, personal digital assistants, gaming consoles, and wireless communication devices to include cellular telephone devices capable of Internet access); peripheral input/output devices (such as keyboards, printers, scanners, plotters, monitors, and drives intended for removable media); related communications devices (such as modems, wireless routers, cables and connections, web cameras, microphones); storage media, defined below; and security devices, also defined below.

b.    Computer software, meaning any and all data, information, instructions, programs, or program codes, stored in the form of electronic, magnetic, optical, or other media, which is capable of being interpreted by a computer or its related components.  Computer software may also include data, data fragments, or control characters integral to the operation of computer software, such as operating systems software, applications software, utility programs, compilers, interpreters, communications software, and other programming used or intended to be used to communicate with computer components.

c.    Computer related documentation, meaning any written, recorded, printed, or electronically stored material that explains or illustrates the configuration or use of any seized computer hardware, software, or related items.

d.      Data security devices, meaning any devices, programs, or data whether themselves in the nature of hardware or software   that can be used or are designed to be used to restrict access to, or to facilitate concealment of, any computer hardware, computer software, computer related documentation, or electronic data records.  Such items include, but are not limited to, user names and passwords; data security hardware (such as encryption devices, chips, and circuit boards); data security software or information (such as test keys and encryption codes); and similar information that is required to access computer programs or date or to otherwise render programs or data into usable form.

e.      All storage media capable of collecting, storing, maintaining, retrieving, concealing, transmitting, and backing up electronic data.  Included within this paragraph is any information stored in the form of electronic, magnetic, optical, or other coding on computer media or on media capable of being read by a computer or computer related equipment, such as fixed hard disks, external hard disks, removable hard disks (including micro drives), floppy diskettes, compact disks (CDs), digital video disks (DVDs), tapes, optical storage devices, laser disks, thumb drives, ipods, digital cameras, memory cards (e.g. CF or SD cards), Xboxes, flash drives, or other memory storage devices.  This also includes areas with digital storage capability on devices such as printers, scanners, wireless routers, etc.

 The above seizure of computer and computer related hardware relates to such computer-related items as being the instrumentalities of crime and also to allow for analysis/search for evidence of crime in an appropriate forensic setting.  Upon a determination that such examination would be

more appropriately made in a controlled environment, this storage media may be removed and

examined at a laboratory location.